STATE v. ACME COFFEE CO.
(No. 9218.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 24, 1920.)

NEW TRIAL ⚭140(1) — EVIDENCE HELD TO SHOW JUDGMENT BY CONSENT IN PURE FOOD SUIT.

On motion for new trial in suit by the state, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4585a, 4587, 4588, for the destruction of a coffee adulterant sold by defendants, evidence *held* to show that the judgment for destruction of the adulterant was in fact an agreed judgment, rendered with consent of defendants, and was not unknown to them.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the State of Texas against the Acme Coffee Company, a partnership composed of T. L. Black and K. Cromer. From judgment for the State after overruling of motion for new trial, defendants appeal. Affirmed.

Chas. T. Rowland and Marvin H. Brown, both of Ft. Worth, for appellants.

Jesse M. Brown, of Ft. Worth, for the State.

DUNKLIN, J. T. L. Black and K. Cromer, engaged in the business of selling coffee to the public under the partnership name of the Acme Coffee Company, have appealed from a judgment rendered against them in favor of the state of Texas, ordering the destruction of certain material called "Nutro" in defendants' possession and about to be used by them as an adulterant, or filler, mixed with coffee, which was sold to the public under the brand of "Coffee and Cereals," in violation of our Pure Food Statutes.

The suit was instituted under articles 4585a, 4587, 4588, V. S. Tex. Civ. Statutes, which authorized the judgment rendered, if the proof was sufficient to sustain the allegations in plaintiff's petition upon which the judgment was based.

The suit was filed February 18, 1919, and citation for defendants, issued on the same day, was served on one of them on that day and on the other February 20, 1919. The citation commanded the defendants to appear and answer the suit at the next term of court beginning May 5, 1919. The petition also contained a prayer for a temporary writ of injunction, restraining defendants from in any manner disposing of the substance called "Nutro," and that prayer was granted on the same date the suit was filed, and a writ of injunction, issued in compliance with the order therefor, was served upon the defendants February 18, 1919.

On February 22, 1919, the judgment from

which this appeal is prosecuted was rendered. It recited that all parties appeared and submitted the questions of facts as well as of law to the court, and that the judgment was rendered after the court had been fully advised in the premises.

On March 4, 1919, 10 days after rendition of the judgment, the defendants filed a motion for a new trial, and error has been assigned to the order overruling that motion; the contention presented being that the court was without jurisdiction to try the case before the convening of its next term beginning May 5, 1919. And it was further alleged in the motion that the judgment was rendered without the knowledge or consent of the defendants. But when the motion for new trial was presented evidence thereon was introduced by both parties, which appears in a statement of facts in the record here. The record also shows a finding made by the trial judge on that hearing to the effect that the judgment rendered was with the consent of the defendants, and was, in fact, an agreed judgment of the parties to the suit. The evidence contained in the statement of facts amply sustains that finding. The testimony of the assistant county attorney who had charge of the case for the state, and of Mr. Brim, the food and drug inspector for the state, was direct and positive that defendant T. L. Black agreed that such a judgment should be rendered; that he was in the office of the clerk of the court when the agreement was made, and that the assistant county attorney then immediately went into the courtroom and had the judgment entered, informing the court at the time of such agreement, and at his request Black was further informed of the amount of costs of the suit which would be assessed against the defendants. And defendant K. Cromer testified in effect that his partner R. L. Black had authority from him to make such a disposition of the suit. The proof further showed that prior to the institution of the suit defendants were mixing the material called "Nutro" with coffee and branding and selling it under the brand of "coffee and cereals," and when the suit was filed had in their possession approximately 2,000 pounds of that substance, which they had purchased for that use. The proof further showed that Nutro was not a cereal of any kind, but was ground pecan hulls, and that the fear that notice of the fact to the public, which likely would result from a contested trial, might injure defendants' trade in the business of selling coffee was the motive which caused Black to agree to the rendition of the judgment appealed from, and also to plead guilty to two criminal cases, one filed against each defendant for selling the mixture misbranded as "coffee and cereals." But the trial judge further found that in using Nutro as a filler to mix with coffee defendants in good faith believed it was a cereal. Defendant Black testified as follows:

"This Nutro had been sold to us as a cereal, and I told Mr. Brim at the time that, if it wasn't all right for us to use, we would like to know it, because I never had had it analyzed at the time, and that we would gladly quit using it and would return it or turn it over to them to dispose of it, if it wasn't all right to use it, and we offered to do anything in the world about it if it wasn't right to use. This all took place before we were arrested. Mr. Brim didn't say much about it; he just took the samples, and I told him at the time that we had used it—I didn't deny the fact that we had used it in cheap priced coffee for the purpose of reducing the price—that is what Nutro is used for, to reduce the price of coffee, because coffee has been going higher and higher, and this Nutro is used to keep the price of coffee down; that is what it is used for. * * * "We don't use filler in all cheap grades of coffee, not real cheap coffee, but we sell some cheap coffee for 22 cents without a filler—we sell some cheap coffee that way, but if they get down to 12½ or 14 cents a pound, we use a filler. We never use over 20 per cent. of filler in this cheap grade of coffee—anywhere from 10 to 15—it depends largely upon what you want."

E. H. Golaz, state chemist, who tested a sample of the Nutro, after testifying that it consisted of ground pecan shells, which were without nutritive value, further testified as follows:

"There is nothing in Nutro that is injurious to health. * * * Nutro, in this case, is simply wood, just like excelsior or sawdust."

In view of the facts recited above, it is quite clear that there was no error in overruling the motion for a new trial; and therefore all assignments of error are overruled, and the judgment is affirmed.